UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **ARNOLD McCALLON**<br>     **LA. DOC #363764**<br>**VS.** | **CIVIL ACTION NO. 3:13-cv-0492**<br><br>**SECTION P**<br><br>**JUDGE ROBERT G. JAMES** |
| **LaSALLE MGMT. CO., ET AL.** | **MAGISTRATE JUDGE KAREN L. HAYES** |

REPORT AND RECOMMENDATION

*Pro se* plaintiff Arnold McCallon, proceeding *in forma pauperis*, filed the instant civil rights complaint (42 U.S.C. §1983) on March 16, 2013. Plaintiff is an inmate in the custody of the Louisiana Department of Corrections (DOC); he is confined at the Jackson Parish Corrections Center (JPCC), Jonesboro and he complains about circumstances and conditions of confinement. (In his amended complaint he alleged tampering with his out-going "legal" mail; the denial of physical and mental health evaluations; dietary problems; exposure to environmental tobacco smoke; the denial of his repeated requests for transfer to another prison; inmate violence; and violation of his right to practice Islam.)

He sued the LaSalle Management Co., Sheriff Andy Brown, and Warden Ducote in his original complaint and added Nurse Freeman and Chaplain Marvin Denton in his amended complaint. He seeks punitive and compensatory damages, and a transfer to another institution. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted.

*Background*

In his original complaint, plaintiff claimed that he has been denied access to the courts because of deficiencies in the JPCC law library; that he has been denied appropriate medical care and diet; that he is exposed to tobacco smoke; that he has been denied a geographical transfer; and that he and other inmates are exposed to inmate violence. [Doc. 1] On May 9, 2013 he was directed to amend his complaint to provide specific facts to support his claims. [Doc. 8] On June 14, 2013 he submitted an amended complaint which added additional claims and defendants and which expanded on the allegations of his original complaint. [Doc. 11]

*Law and Analysis*

*1. Screening*

Plaintiff was an inmate in the custody of the LDOC when he experienced the conditions complained of. When a prisoner is allowed to proceed *in forma pauperis* in a suit against officers or employees of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint, and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C.1915A; 28 U.S.C.1915(e)(2); *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998). However, in order to benefit from this assumption of truthfulness, a civil rights

plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Ashcroft v. Iqbal,* 596 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995).

Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Courts are not only vested with the authority to dismiss a claim based on an indisputably meritless legal theory, but are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Neiztke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

Plaintiff filed an original complaint outlining the broad contours of his claim; he was directed to amend his complaint to provide factual support for the otherwise conclusory allegations set forth in the original complaint, and was specifically directed to allege the nature of the injury or prejudice suffered as a result of the alleged Constitutional violations. He amended his complaint as shown above; further amendment would serve no useful purpose.

*1. Access to Court*

According to plaintiff, on December 27, 2012, and on unspecified dates in February 2013, plaintiff's "mail" to the Twelfth Judicial District Court, Avoyelles Parish, was not received. He further alleged, "... Warden Ducote tells his administrators to the facility what goes out dealing with criminal, and civil matters dealing with the courts, this therefore hurts the plaintiff and denied him access to the Courts even to prepare himself for any case..."

3

By way of these allegations, plaintiff implies that he is being denied his constitutionally protected right of access to the courts. "It has long been recognized that prisoners generally enjoy the constitutional right of access to the court." *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir.1999). *See Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969). The right of access to the court is not unlimited, however, and includes "only a reasonable opportunity to file non-frivolous legal claims challenging [the prisoners'] convictions or conditions of confinement." *Id.* (citing *Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996)). Put another way, "[w]hile the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court." *Brewer v. Wilkinson*, 3 F.3d at 821; *Lewis v. Casey*, 518 U.S. at 351, 116 S.Ct. at 2179-81; *Norton v. Dimazana*, 122 F.3d at 290; and *Eason v. Thaler*, 73 F.3d 1322, 1329 (5th Cir.1996). Here plaintiff implies that his right to transmit documents to the State District Court has been curtailed.

Nevertheless, in order for him to state a claim that he was denied his constitutional right of access to the courts, even if he can show some interference, he must also "demonstrate[ ] that his position as a litigant was <u>prejudiced</u> by his denial of access to the court." *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir.1996) (*per curiam*) (citing *Walker v. Navarro County Jail*, 4 F.3d 410, 413 (5th Cir.1993)). This requirement that a claimant show "<u>actual injury</u>" is "not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 354. In other words, plaintiff, at the very least, must show that he was prevented from filing a non-frivolous pleading. While plaintiff has alleged in conclusory fashion that he suffered prejudice, he has not factually demonstrated

4

prejudice as required by the jurisprudence even though he was specifically ordered to allege facts to support his claim. Plaintiff has not alleged the nature of the pleadings he sought to file with the District Court; nor has he demonstrated prejudice resulting from the alleged interference. Finally, his claim concerning Warden Ducote is simply incomprehensible.

Since plaintiff failed to demonstrate prejudice, his access to courts claim must be dismissed as frivolous.

### 2. Medical Care/Diet

Plaintiff complained that he was "denied a fully physical and mental evaluation" and that the medical staff charge a fee for blood pressure checks. Plaintiff also complained that there are no "on call EMTs" and deputies who are not trained in the medical field distribute medication. Plaintiff further complained that throughout the period of his incarceration (approximately 29 months) he has "never received no such treatment."

Plaintiff is a convicted prisoner. His right to an adequate diet and proper medical care stem from the Eighth Amendment's prohibition of cruel and unusual punishment. In order to establish an actionable constitutional violation plaintiff must allege facts tending to establish that the defendants were deliberately indifferent to his serious medical needs. *Thompson v. Upshur County, Texas*, 245 F.3d 447, 457 (5th Cir.2001). A showing of deliberate indifference with regard to medical treatment requires the plaintiff to submit evidence that prison officials "'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001) (citation omitted). Plaintiff's pleadings fall far short of alleging facts sufficient to establish deliberate

5

indifference on the part of any of the named defendants or any of the other corrections officers or healthcare officials identified in his pleadings. The failure of the defendants to provide a physical or mental evaluation, without more, does not establish deliberate indifference. Likewise, the failure of the facility to provide "EMTs" or to permit the distribution of medication by allegedly untrained deputies, without more, also fails to state a compensable claim. Here, plaintiff failed to allege any need for physical or mental examinations, and he alleged no harm or injury which resulted from the faults alleged.

He also complained that the prison does not employ a dietician to balance the dietary intake of LDOC inmates and that water remains in the food trays and this "can cause 'bowel infections.'" He also complained that he is served insufficient fruit and protein and too much carbohydrates which can cause diabetes. The Constitution mandates that inmates be provided "'well-balanced meal[s], containing sufficient nutritional value to preserve health.' " *Green v. Ferrell*, 801 F.2d 765, 770 (5th Cir.1986) (quoting *Smith v. Sullivan*, 553 F.2d 373, 380 (5th Cir.1977)) (footnote omitted); see also *Eason v. Thaler*, 73 F.3d 1322, 1327 (5th Cir.1996) ( per curiam) ("To comply with the Constitution, inmates must receive 'reasonably adequate' food."). "The deprivation of food constitutes cruel and unusual punishment only if it denies a prisoner the 'minimal civilized measure of life's necessities.' " *Talib v. Gilley*, 138 F.3d 211, 214, n. 3 (5th Cir.1998)(quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991)) (internal quotations omitted). "Whether the deprivation of food falls below this threshold depends on the amount and duration of the deprivation." *Id.*

Here, plaintiff has not alleged that he was denied anything close to the "minimal measure of life's necessities...". Indeed, plaintiff shows no injury or harm resulting from his dietary and

6

medical care claims. Accordingly, his complaint fails to state a claim for which relief may be granted.

*3. ETS*

Plaintiff complained that he has been exposed to tobacco smoke in violation of the "Clean Air Act." In *Helling v. McKinney*, 509 U.S. 25, 35-36, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993), the Supreme Court addressed the issue of exposure to ETS and held that the prisoner stated a cause of action under the Eighth Amendment when he alleged that prison officials were deliberately indifferent to his serious medical needs by exposing him to ETS which posed an unreasonable risk to his health. Nevertheless, in order to state an Eighth Amendment violation based on exposure to secondhand smoke, the plaintiff must prove objectively that he is "being exposed to unreasonably high levels of ETS." *Helling v. McKinney*, 509 U.S. 25, 35, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993). In addition, the prisoner must show subjectively that prison authorities demonstrated a "deliberate indifference" to his plight. *Id.*

Plaintiff has not shown that the exposure complained of amounts to "unreasonably high levels of ETS"; nor has he alleged deliberate indifference on the part of the defendants. In other words, plaintiff's complaint fails to allege a claim for which relief may be granted.

*4. Transfer*

Plaintiff complained that he has been denied his repeated requests for a transfer to facility closer to where his relatives live. Plaintiff is an inmate in the custody of the LDOC. Under Louisiana law, "any individual subject to confinement in a state adult penal or correctional institution shall be committed to the Louisiana Department of Public Safety and Corrections and not to any particular institution within the jurisdiction of the department. The director of

<u>corrections shall assign each newly committed inmate to an appropriate penal or correctional facility. The director may transfer an inmate from one such facility to another, insofar as the transfer is consistent with the commitment and in accordance with treatment, training and security needs established by the department</u>..." La. R.S.15:824(A).

Plaintiff is an LDOC inmate and therefore his placement is solely within the purview of the LDOC. Broad discretionary authority must be afforded to prison administrators because the administration of a prison is "at best an extraordinarily difficult undertaking." *Wolff v. McDonnell*, 418 U.S. 539, 566, 94 S.Ct. 2963, 2979, 41 L.Ed.2d 935 (1974). To hold that any substantial deprivation imposed by prison authorities triggers the procedural protections of the Due Process Clause would subject to judicial review a wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts. *Meachum v. Fano*, 427 U.S. 215, 225, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976). "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnston*, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948).

Contrary to petitioner's assertion, prisoners simply do not have a constitutionally derived liberty interest in being held in any particular institution. *See Meachum v. Fano*, 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976); *Olim v. Wakinekona*, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); *Montanye v. Haymes*, 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976); *Adams v. Gunnell*, 729 F.2d 362, 368 (5th Cir. 1984); *Oladipupo v. Austin,* 104 F.Supp.2d 643 (W.D.La. 2000). Petitioner's claim is clearly frivolous.

8

*5. Inmate Violence*

Plaintiff complained that he is "exposed to inmate violence." Plaintiff's right to protection from violence is governed by the Eighth Amendment's prohibition of cruel and unusual punishment and, like his medical care claim, is measured by the standard of subjective deliberate indifference enunciated by the Supreme Court in *Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Under that standard, a prison official is not liable for failing to protect an inmate unless the official "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). In order to prevail plaintiff must establish that the defendant officials: (1) were aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and, (2) actually drew the inference. *Farmer*, 511 U.S. at 837. Negligent inaction can never be the basis of a failure to protect claim. *Farmer*, 511 U.S. at 835.

The legal conclusion of deliberate indifference must rest on facts clearly evincing "wanton" actions on the part of defendants. *Johnson v. Treen*, 759 F.2d 1236, 1237 (5th Cir.1985). In *Smith v. Wade*, 461 U.S. 30, 39 n. 8, 103 S.C. 1625, 1632 n. 8, 75 L.Ed.2d 632 (1983), the Court approved the following definition of wanton: "'Wanton means reckless – without regard to the rights of others ... Wantonly means causelessly, without restraint, and in reckless disregard of the rights of others. Wantonness is defined as a licentious act of one man towards the person of another, without regard to his rights; it has also been defined as the conscious failure by one charged with a duty to exercise due care and diligence to prevent an injury after the discovery of the peril, or under circumstances where he is charged with a knowledge of such peril, and being conscious of the inevitable or probable results of such

9

failure.' 30 American and English Encyclopedia of Law 2-4 (2d ed. 905) (footnotes omitted)."

Plaintiff has alleged in conclusory fashion that he and others are "exposed" to violence, but he has not alleged that he, or anyone else, was actually victimized by another inmate at the prison. It is thus clear that he cannot establish deliberate indifference with regard to his failure to protect claim.

He also complained that inmates from New Orleans are segregated from other inmates in violation of his civil rights. However, he does not allege whether he is in fact one of those segregated inmates, or, if not, how the segregation of these inmates impacts his rights under the Constitution. This claim is also frivolous.

*6. Practice of Religion*

Plaintiff claimed that he is a Muslim and that his right to freely exercise Islam is violated because the facility chaplain has appointed the Muslim inmates' "*Iman*" and that should be left to the community of Muslims. He also complained that the Muslim inmates are separated and thus cannot "pray on one accord." He complained that the diet provided for Ramadan is not proper and that the Muslim prisoner community "rarely get our prayer service Friday *Jumah* Prayer" and no *Eid* Feast following Ramadan. Finally, he complained that the Chaplain does not allow the community to "set up a Muslim account for books, prayer rugs, etc."

Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion. Nevertheless, lawful incarceration, by its very nature, brings about the necessary withdrawal or limitation of many privileges and rights. The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives. *See O'Lone v. Estate of Shabazz*,

482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987).

The standard for evaluating an inmate's claim that a prison regulation or practice improperly restricts his right to the free exercise of his religion requires the court to evaluate the regulation or practice in order to determine whether it "is reasonably related to legitimate penological interests." *Id.* at 349. The "reasonableness" of a regulation or practice is evaluated based upon the following inquiry: (1) Is there a valid, rational connection between the prison practice and the legitimate governmental interest put forward by prison officials to justify the practice; (2) Are there alternative means of exercising the right that remain open to prison inmates, that is, are inmates allowed other means to express their religious beliefs on a general level; (3) What impact will accommodation of the asserted constitutional right have on guards and other inmates and on the allocation of prison resources generally; and, (4) Are alternatives to the prison practice available that would accommodate the inmates' rights at a *de minimis* cost to valid penological interests? *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), *Green v. Polunsky*, 229 F.3d 486, 489-90 (5th Cir.2000). Each factor need not be considered, and the factors need not be evaluated evenly. *Scott v. Mississippi Dep't of Corrections*, 961 F.2d 77, 80 (5th Cir.1992).

Plaintiff claims that his right to participate in Friday Jumah services has been curtailed and that he is not provided opportunities to have fellowship with his co-religionists. It must be noted, that with regard to the first prong of the *Turner* test, plaintiff has not alleged that prison officials have <u>prohibited</u> him from practicing his religion. Indeed, according to the available evidence, plaintiff has never been prohibited from practicing his religion. The second and forth prongs of the *Turner* test, address whether or not "alternative means" of practicing his religion

have been made available to the plaintiff. In analyzing the availability to inmates of "alternative means" of exercising their religion, however, "[t]he pertinent question is not whether the inmates have been denied specific religious accommodations, but whether, more broadly, <u>the prison affords the inmates opportunities to exercise their faith</u>." *Freeman v. Texas Department of Criminal Justice*, 369 F.3d 854, 861 (5th Cir.2004); *Adkins v. Kaspar*, 393 F.3d 559, 564 (5th Cir. 2004). Plaintiff has not claimed that he was denied the right to practice his religion at any time. In *O'Lone v. Estate of Shabazz, supra.*, the inmate-plaintiffs complained that they were not allowed to attend the weekly *Jumah* services because of their assignments to work details outside the main prison grounds. *O'Lone v. Estate of Shabazz*, 482 U.S. at 345-46. The Supreme Court considered the evidence supplied by the prison administration regarding security needs, rehabilitative needs, and the impact of alternative accommodations; this evidence was evaluated in the light of those rights actually retained by the inmates to practice their religion. The Court then noted that the plaintiff- inmates were not deprived of <u>all</u> forms of religious exercise. Based upon these facts, the Supreme Court held that the "ability on the part of [the inmates] to participate in <u>other religious observances</u> of their faith supports the conclusion that the restrictions at issue here were reasonable." *Id.* at 352. Plaintiff is again reminded, prison administrators are obliged only to provide inmates with "reasonable <u>opportunities</u> ... to exercise the religious freedoms guaranteed by the First and Fourteenth Amendments." *Id.* at 322 n. 2, 92 S.Ct. 1079.

  Liberally construed, and giving plaintiff the benefit of the doubt, it may be assumed that he also intended to allege a violation of the Religious Land Use and Institutionalized Persons Act (RLUIPA) [see 42 U.S.C. §2000cc *et seq*.]. RLUIPA mandates that, "[n]o government shall

impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person –

 (1) is in furtherance of a compelling governmental interest; and

 (2) is the least restrictive means of furthering that compelling governmental interest. 42 U.S.C. § 2000cc-1(a).

 The Supreme Court has noted that RLUIPA protects the rights of prisoners who are unable to freely attend to their religious observances and who are dependant on the government's permission and accommodation. *Cutter v. Wilkinson*, 544 U.S. 709, 721, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005).

 In order to state a claim under RLUIPA, the prisoner must show that challenged government action places a substantial burden on the exercise of his religion. If the prisoner carries the burden of proof on this issue, then the government must demonstrate some compelling interest warranting the challenged action. Under RLUIPA, a "religious exercise" includes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *Id. § 2000cc-5(7)(A).* Thus, religious services, religious education, and dietary principles all qualify as "religious exercises."

 While the statute does not define "substantial burden," Fifth Circuit jurisprudence has defined it as follows in the context of the RLUIPA, "... a government action or regulation creates a 'substantial burden' on a religious exercise if it truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs." *Adkins v. Kaspar*, 393 F.3d 559 (5th Cir. 2004) at 569-70.

Plaintiff has not demonstrated either a First Amendment violation or the violation of RLUIPA and therefore his complaint should be dismissed as frivolous.

### *Conclusion and Recommendation*

Therefore,

**IT IS RECOMMENDED THAT** plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

In Chambers, Monroe, Louisiana, August 5, 2013.

_____
KAREN L. HAYES
U. S. MAGISTRATE JUDGE